**OKLAHOMA NATURAL GAS CORPORA-TION v. MUNICIPAL GAS CO. et al.**

**No. 80.**

Circuit Court of Appeals, Tenth Circuit.

Feb. 10, 1930.

COTTERAL, Circuit Judge.

The Oklahoma Natural Gas Corporation brought this suit against the Municipal Gas Company and the city of Muskogee for a decree awarding specific performance of a contract by which the city leased to the Muskogee Gas & Electric Company, predecessor of the appellant, a certain gas line, and an injunction against interference with its customers on that line. This appeal is from a decree denying that relief without prejudice to an action at law for damages.

We first notice the facts as shown by the pleadings and the evidence in the case. On January 26, 1917, the Muskogee Gas & Electric Company and the city of Muskogee entered into a written contract. It was agreed that the company would build a gas pipe line along the right of way of the city water system from a point in the city to a connection with the pipe of the Mid-West Casket Company, to enable the city to supply gas to that company and other consumers, and that line was leased to the city for such purpose. In consideration therefor, the city leased to the Muskogee Gas & Electric Company a gas pipe line it owned and then in use by the company to supply gas to domestic consumers, extending from a reducing station in the city to its waterworks plant, with a right to the ordinary uses thereof, and the city conveyed to that company a perpetual right of way for a gas pipe line over the city's water system line from a point in the city to the Muskogee Country Club, with a permit to lay and maintain thereon a gas main and connecting pipes to supply domestic consumers. It was agreed the leases should remain in force and effect until canceled, upon written notice of 90 days by either party, or by mutual consent, with the privilege reserved to the company to remove its pipes and other materials, within a reasonable time, not to exceed six months.

The company built the line for the use of the city, as agreed, and on its completion used the city's line, and in all things complied with the terms of the contract. Thereafter, the Oklahoma Gas & Electric Company became the owner of the contract, and for a long period utilized the city's line, with the approval of the city. The two predecessors of appellant, with the acquiescence of the city, constructed lateral lines from the city's line to the premises of their gas consumers. On March 1, 1928, appellant acquired all the property of those companies and was serving 98 consumers at Muskogee, in addition to the city.

I. J. Underwood, of Tulsa, Okl. (R. C. Allen and Sam S. Canterbury, both of Tulsa, Okl., and D. Hayden Linebaugh and Paul Pinson, both of Muskogee, Okl., on the brief), for appellant.

John W. Porter, of Muskogee, Okl., and G. E. Garner, of Little Rock, Ark., for appellee Gas Company.

C. A. Ambrister, of Muskogee, Okl. (Bower Broaddus, of Muskogee, Okl., on the brief), for appellee City.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

The city breached the contract, without notice, by executing another contract with the Municipal Gas Company of Muskogee, whereby that company was authorized to connect its pipe line with the city's line, and furnish gas to the city and to customers upon that line.

On March 24, 1928, the city manager wrote this letter to appellant:

"City of Muskogee, Oklahoma.
March 24th, 1928.

"W. M. Baker, Local Manager, Oklahoma Natural Gas Corp., City.

"Dear Sir: Enclosed find copy of letter received this date from the Municipal Gas Co., which is self-explanatory.

"Under the City's contract with this company it is obliged to furnish gas to the City in its main leading to the City pumping station on or before March 31st, 1928.

"It will therefore be necessary to shut off your gas so that they may make their connection, as per their enclosed notice, and in accordance with their contract.

"Very truly,
"A. F. McGarr, City Manager."

"Receipt acknowledged of this letter this 24th day of March, 1928.

"Oklahoma Natural Gas Corp.
"By Local Manager."

In that letter was another, which reads as follows:

"March 24, 1928.

"A. F. McGarr, City Manager, City of Muskogee, City.

"Dear Sir: Please be advised that we are ready to make connection with the City's gas line leading to the Pumping plant on the River, for the purpose of supplying your gas requirements, as per the terms of certain contract entered into between the City of Muskogee and ourselves.

"We have completed arrangements to make this connection at 8:30 A. M. Sunday morning the 25th of March and suggest that you notify the Oklahoma Natural Gas Corp. to disconnect from the City gas line at that time.

"Very truly,
"Municipal Gas Company of Muskogee,
"By M. B. Morgan, Vice President."

The Municipal Gas Company proceeded to disconnect appellant's line from the city's line and to connect its own line therewith, and to solicit contracts from appellant's customers and by coercion and threats to cut off and reduce the price of gas, took over 79 of appellant's customers, for a time using appellant's laterals, but later constructing its own laterals and installing meters.

Appellant's attorney requested the city to allow time for it to build a new line, and it was extended until April 10, on condition appellant would permit the Municipal Gas Company to connect with the city's line and indemnify the city against loss, but the offer was refused. Appellant built its new line in a week or more after March 31, 1928. From that line it may supply its customers by means of connecting laterals.

It is alleged in the bill, that appellant's damages from the loss of customers may not be estimated, and there was undisputed testimony it cannot be known how long a particular gas supply will be available, or for what time and in what amount and number customers will take gas in the future.

The cause was tried on June 27 and 28, 1928, and a final decree was rendered on the latter date. The Municipal Gas Company was enjoined from enforcing its five-year contracts with customers so as to prevent discontinuance of service by them, or seeking damages from them for violations of said contracts during their term, or until the further order of the court. The appellant was denied relief, its bill against the city was dismissed, and the decree in terms provided it was without prejudice to action at law against the defendants.

After the appeal was taken in this case, and on February 11, 1929, the City of Muskogee, by its council, adopted a resolution directing its manager to serve such notice as may be required by law on appellant, canceling the contract of January 26, 1917. Two days later, the resolution with notice of the termination of the contract was mailed to appellant. The notice executed by the city through its mayor recited that "the contract dated January 26, 1927, be and it is hereby cancelled."

Relying upon that notice, the city moved to dismiss this appeal, insisting that the contract was terminated and the controversy has become moot, citing Mills v. Green, 159 U. S. 651, 16 S. Ct. 132, 40 L. Ed. 293; Security Mutual Life Insurance Co. v. Prewitt, 200 U. S. 446, 26 S. Ct. 314, 50 L. Ed. 545, and other cases in support of the motion. The decisions would be applicable, if the contract had been canceled. It is said at least the cancellation was effective at the end of 90 days from the time the notice was given.

But we cannot agree that the contract has been terminated. It provided its own

method of cancellation—by 90 days' written notice, or by mutual consent. This stipulation was binding upon both parties. 13 C. J. 607. The contract contemplated a notice effective at the end of 90 days in the future. The object in view was doubtless precautionary to allow both parties a reasonable time to adjust themselves to the new situation. In the interim appellant would have an opportunity to arrange for the distribution of gas, through a line it might construct on its right of way acquired from the city, and thereby retain its customers, and the city would be enabled to make other arrangements to obtain gas for itself, industrial consumers, and others. Instead of giving notice, the city saw fit to commit a flagrant breach of the contract, and, after the resulting damage was done to the appellant, it sought to declare the contract terminated. In our opinion, a notice would not be operative, unless the appellant is restored to the position it would have enjoyed by a 90 days' notice with its attendant privileges. As we conclude the contract has not been terminated, we must pass upon the rights and remedy claimed by appellant. The controversy is not moot, and the motion to dismiss the appeal is overruled.

There is a contention that the contract was terminated by mutual consent, consisting of a waiver of notice, but we fail to find it supported by any evidence in the record. There were other negotiations than already stated, wherein appellant's manager sought time to build the new line, but the request was not granted and he vigorously protested against the disconnection of appellant's lines.

The validity of the contract is conceded as being within the proprietary powers of the city. This leaves for decision the main and controlling question whether the appellant is entitled to specific performance of its contract or an injunction whereby it may be restored to the rights it would have enjoyed under the contract.

It is contended by the city that the relief sought is not warranted, that denial of it was discretionary with the trial court, and that it should not be awarded, because the remedy would be harsh and unreasonable, and more hurtful to others than beneficial to appellant.

It is true, relief by specific performance rests in the discretion of the court. But this means a sound and not an arbitrary discretion. "The remedy is only discretionary, as it depends on certain equitable conditions, and these being fulfilled, it becomes as much

a matter of right as the legal relief of damages." Pomeroy, Spec. Perf. (3d Ed.) § 38. The conditions enumerated have been met in this case. Of course, the remedy is allowed only where the complainant has no adequate remedy at law. Appellant cannot be adequately compensated in damages from the very nature of the injury it has sustained. As was said in Griffin v. Oklahoma Gas Corporation, 37 F.(2d) 545, decided by this court January 9, 1930: "The adequate remedy at law, which will preclude the granting of specific performance of a contract, must be as certain, prompt, complete and efficient to obtain the ends of justice as a decree of specific performance."

The supposed harshness of the remedy is due to the action of both defendants. The attitude of the city is necessarily one of breaching the contract and producing a situation whereby injury would accrue from enforcing the contract, and it is estopped to make such defense. The Municipal Gas Company is not entitled to complain of an injunction protective of appellant's rights, as it is chargeable with wantonly inducing for its advantage a breach of appellant's contract with the city. Puget Sound Power & Light Co. v. Asia (C. C. A.) 277 F. 1, 4; Dr. Miles Med. Co. v. Park, 220 U. S. 373, 31 S. Ct. 376, 55 L. Ed. 502.

Appellant's claim to relief in this case by specific performance and injunction is fully sustained by authority. Morgan v. Beloit, 7 Wall. 613, 19 L. Ed. 203; In re Lennon, 166 U. S. 548, 17 S. Ct. 658, 41 L. Ed. 1110; Loisel v. Mortimer (C. C. A.) 277 F. 882; National M. M. Co. v. Triumph Mfg. Co. (C. C. A.) 13 F.(2d) 6; Fetzer v. Johnson (C. C. A.) 15 F.(2d) 145.

The decree is reversed, and the cause is remanded to the trial court, with direction to enter a decree requiring the appellees to disconnect the gas supply of the Municipal Gas Company from the line the city leased to appellant, to allow appellant to restore its connection with that line and use the same for the distribution of gas by contract with customers, and to enjoin the defendants from interference therewith or furnishing gas to customers on said line, until the contract may be terminated upon notice as stipulated by its terms after such disconnection and restoration, and with the further direction to award appellant such damages against defendants as may be susceptible to legal proof for loss of the sale of gas to the date of said decree.

Reversed.