**GELPI v. TUGWELL, Governor.**

**No. 3648.**

Circuit Court of Appeals, First Circuit.

Nov. 14, 1941.

Ismael Soldevila, of San Juan, P. R. (Jose Rafael Gelpi, of Mayaguez, P. R., on the brief), for appellant.

William Cattron Rigby, of Washington, D. C. (George A. Malcolm, of San Juan, P.

R., and Nathan R. Margold, of Washington, D. C., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

## WOODBURY, Circuit Judge.

This appeal is from a judgment of the Supreme Court of Puerto Rico affirming a judgment of the Chief Justice of that court sitting in vacation denying the plaintiff's petition for a writ of mandamus. The jurisdiction of this court is predicated upon certain federal questions raised and considered in the court below.

The Governor of Puerto Rico on April 17, 1936, appointed the plaintiff for a term of four years to the office of secretary of the District Court of Mayaguez. By executive order on August 12, 1938, he removed her from that office as of April 25 of that year. The plaintiff thereupon petitioned, as above described, for a writ of mandamus alleging therein that she had been illegally removed from office and praying that: "a peremptory writ of mandamus be issued against the Governor of Puerto Rico ordering him to reinstate the petitioner as secretary of the Mayaguez District Court."

The plaintiff's appeal must be dismissed.

■ She makes no claim for damages either as measured by the salary withheld from her during the remainder of her term of office or as measured in any other way, nor can she do so in this proceeding under the rule of Belaval v. Todd, 24 P.R. 24, 765. Her only prayer is for reinstatement in office. But, since her term of office expired over eighteen months ago and we cannot assume that she is still entitled to it as a holdover (Tennessee v. Condon, 189 U.S. 64, 70, 23 S.Ct. 579, 47 L.Ed. 709), it is now impossible, even if we should be of opinion that her claim was meritorious, to grant her this relief. Our duty in the premises was pointed out by the Supreme Court of the United States in the case of Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293, in the following language:

"The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal."

The above case has been quoted from and cited with approval by the court which rendered it many times since. Tennessee v. Condon, 189 U.S. 64, 23 S.Ct. 579, 47 L.Ed. 709; Jones v. Montague, 194 U.S. 147, 24 S.Ct. 611, 48 L.Ed. 913; Security Life Ins. Co. v. Prewitt, 200 U.S. 446, 26 S.Ct. 314, 50 L.Ed. 545; Blackman v. Stone, 300 U.S. 641, 57 S.Ct. 514, 81 L.Ed. 856. The situation of the plaintiff is not altered by her prayer for costs, Tennessee v. Condon, supra, and we fail to see how the civil disabilities, if any, which may be imposed upon her because of her removal from office (Laws, P.R. (1931), pp. 600, 608), can render it possible for us to grant the impossible relief for which she asks.

■ Since appellant, without fault on her part, is prevented from obtaining a review of the judgment below merely because, from intervening events, the appeal has become moot, that judgment will not become res judicata on the issues involved, in any subsequent litigation based upon a different cause of action. Appellant will be free to attack collaterally the executive order of removal, either in a suit for salary, or in an appropriate proceeding to test her eligibility to hold certain civil offices should she later aspire thereto.

The appeal is dismissed.

MAGRUDER, Circuit Judge (dissenting).

It does not seem to me that this appeal should be dismissed on the ground that it has become moot. Counsel for the Governor, at the oral argument before us, disclaimed any such contention.

The petition alleges on various legal points that the Governor's executive order of removal is null and void, and therefore asks the court below to issue a peremptory writ of mandamus. The necessary preliminary to granting such a writ is an adjudication that the order of removal is void and of no effect. Appellant's statutory term of office has now elapsed, so it is too late for a court to order her reinstatement. But though the affirmative relief of reinstatement is no longer available, it does not follow that a judgment or decree vacating

the executive order would be inappropriate. For two reasons, such a judgment would not be a decision on a mere academic or abstract issue: (1) It would settle appellant's right to recover her salary for the balance of the term. The order of removal being vacated, the fiscal officer of the insular government whose duty it is to pay the salary would no longer have any defense to a suit for its recovery. (2) It would settle her eligibility to hold certain other offices from which she would be disbarred by statute if she had been lawfully removed by the Governor "for delinquency or immoral conduct." Laws of P.R., 1931, No. 88, § 21, pp. 550–552; Laws of P.R., 1931, No. 98, §§ 18, 29, pp. 600 and 608.

In the leading case of Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 135, 40 L.Ed. 293, the plaintiff brought a bill in equity against a supervisor of registration to secure the right to vote at a forthcoming election of delegates to a constitutional convention. The circuit court of appeals reversed an order of the trial court granting an injunction and remanded the case to that court with directions to dismiss the bill. The plaintiff appealed to the Supreme Court, but shortly before this appeal had been taken the election had been held. The Supreme Court dismissed the appeal as moot because "no relief within the scope of the bill could now be granted." The case is clear; the delegates to the constitutional convention having already been elected, there remained to the plaintiff only an academic interest in the legal questions presented by his bill. It seems to me that this case is not at all controlling in the case at bar, for the reasons I have above indicated. Cf. Commonwealth v. Fleckner, 167 Mass. 13, 44 N.E. 1053; Barthelemy v. People, 2 Hill, N.Y., 248, 255; Masses Publishing Co. v. Patten, 2 Cir., 245 F. 102; Id., 2 Cir., 246 F. 24, L.R.A.1918C, 79, Ann.Cas.1918B, 999; 34 Harv.L.Rev. 416; Willis v. Buchman, 240 Ala. 386, 199 So. 892, 132 A.L.R. 1185.

The opinion of the court, in dismissing the appeal as moot, reserves to appellant the right to raise in subsequent litigation the same issues which she sought to have us pass on in the present case. I agree that if the appeal is to be dismissed on this ground it would be most unjust to leave the judgment below standing as res judicata; and I think that the doctrine of res judicata is sufficiently flexible to avoid such a harsh result. Cf. Blackman v. Stone, 300 U.S. 641, 57 S.Ct. 514, 81 L.Ed. 856. But it seems to me unfortunate to put upon appellant the burden of subsequent litigation when, as I see it, these issues are legitimately before us for decision now.

I shall briefly indicate my view on the merits.

Section 49 of the Organic Act, 39 Stat. 967, 48 U.S.C.A. § 873, vesting in the Governor the power of appointing the secretaries of the insular courts by and with the advice and consent of the Senate, does not by implication give the Governor an absolute power of removal. To that effect, see the able and exhaustive opinion of the Supreme Court of Puerto Rico in Jimenez v. Reily, 30 P.R.R. 582. By the saving provisions of §§ 40 and 57 of the Organic Act, 39 Stat. 965, 968, 48 U.S.C.A. §§ 861, 735, 736, Congress left in force so much of the Act of March 9, 1905, Laws of P.R., 1905, p. 120, as fixed a four-year term for the office of secretary and provided that the secretary "shall be subject to removal at any time by the Governor for cause shown." This Act of 1905 had been validly enacted by the legislature of Puerto Rico pursuant to the express authority of § 33 of the earlier Organic Act, 31 Stat. 84, 48 U.S. C.A. § 861 note. The Governor derives his power wholly from the statute, not from the Constitution of the United States. His power of removal has been limited by the conjoint effect of the Organic Act and the legislative act of 1905. This conclusion I would arrive at, whether the secretary of the court is the kind of officer whom the President of the United States would have unrestricted constitutional power to remove as incident to the power of appointment (Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160), or is the kind of officer as to whom Congress may lawfully circumscribe the President's power of removal. Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611.

Removal "for cause shown" clearly implies due notice of charges, and a hearing at which the accusing evidence is presented and at which the officer is afforded fair opportunity to offer relevant evidence in refutation of the charges. Such appears to be the construction of the statute accepted by the Supreme Court of Puerto Rico. See Jimenez v. Reily, 30 P.R. 582, 650, 675. The question, then, is whether the statutory requirements were met in the instant case.

A bill affecting the office of secretary of the district courts was pending in the territorial legislature. Addressing himself to the bill, the Speaker of the House, the Hon. Miguel Angel Garcia Mendez, told the House of alleged irregularities in the office of secretary of the District Court of Mayaguez, and accused appellant of being a "decorative person, a dummy" who showed improper favoritism to certain third persons in connection with the business of her office. In answer to the attack upon her, appellant dispatched a telegram stating that if there had been any irregularities in the district court they were due solely to the Speaker's "malevolent conduct" for which he ought to be disbarred from the practice of law; that the Speaker was guilty of ungentlemanly conduct in vengefully making her the scapegoat "because of personal quarrels with my relatives." She requested the appointment of an investigating committee to examine into her official conduct. She requested further that the telegram be spread on the records of the House. The telegram was signed by her officially as "Secretary, District Court of Mayaguez."

The House of Representatives was scandalized, and forthwith passed a resolution reciting that "the sending and publishing of said message because of statements made by the Speaker, acting in his capacity as legislator under the parliamentary immunity that protects every legislator, according to existing law, constitutes an improper action, contrary to the dignity and prerogatives of this House and of its members," and requesting the Governor, in order to vindicate the dignity of the House, to demand appellant's resignation, failing which, to prefer charges against her for the purpose of her removal.

Complying with the House resolution, the Governor did demand of appellant that she resign. This she declined to do, in a dignified letter to the Governor, stating that the House had not given her a right to be heard and that a resignation by her would necessarily imply an acceptance by her of the unjust accusations which had been made by the Speaker.

Thereupon the Governor preferred charges against her, and designated a referee to hear evidence and report. A so-called "special charge" recited that appellant in sending the "scandalous and disrespectful" telegram above summarized, was guilty of conduct "contrary to law, prejudicial to the public service and done with the pur-

pose to disrespect, dishonor and to expose to the public contempt the public affairs and specially the House of Representatives and its President." There were also nine "additional charges" relating to details of administration in appellant's office.

In her answer to the "special charge" appellant admitted sending the telegram, insisted that it was sent in defense of herself against unjust accusations, and denied any intention of being disrespectful to the dignity and prerogatives of the House. Further, the answer set forth in very concrete detail a large number of alleged incidents relating to the conduct of Mr. Garcia Mendez as a lawyer in cases pending in the District Court of Mayaguez, which incidents, if true, would have amply justified the derogatory references to the Speaker contained in the telegram. At the hearing the referee refused to allow appellant to introduce evidence in substantiation of these countercharges against the Speaker.

The referee's report to the Governor found as to the nine additional charges that though some of them had been substantiated in part, they were only technical violations or minor indiscretions not implying misconduct in office, and that they should not be considered by the Governor as cause for removal.

As to the "special charge," the referee concluded that the sending of the telegram constituted legal cause for removal, in the sense that an executive order of removal on that ground would not be upset in the courts; but the referee refrained from advising the Governor whether appellant ought to be removed on this ground.

Upon receipt of the report, the Governor wrote appellant indicating that it would be his "very unpleasant" duty to remove her because of the "scandalous, insulting and disrespectful nature" of the telegram, if she did not accept the alternative of resigning. The letter added: "As to the nine additional charges, those in general were not a [sic] substantiated, and it would appear that they should be considered solely as oversights not implying improper conduct or serious negligence, but rather technical failure to comply with rules and some minor indiscretion without malicious intent."

Appellant again refused to resign. Thereupon the Governor issued an executive order removing appellant from the office of secretary, the order reciting that "having given due consideration to the

charges preferred, your reply thereto and the evidence presented at the hearing, I have come to the conclusion that there exists sufficient cause and evidence to justify your removal from office."

Appellant's petition for a writ of mandamus came on to be heard before Chief Justice del Toro, pursuant to Act No. 59, April 27, 1931 (Laws of P.R., 1931, p. 404), the Supreme Court of Puerto Rico being in vacation. The Chief Justice gave judgment denying the writ. Subsequently, upon review by the Supreme Court this judgment was affirmed by an equally divided vote. Associate Justice Wolf wrote a brief opinion stating that he voted for affirmance because he thought § 49 of the Organic Act, 48 U.S.C.A. § 873, vested in the Governor an absolute power of removal, "whether the reasons are good or bad." Associate Justice Hutchinson also voted for affirmance, but wrote no opinion, merely recording that his vote was "for reasons different to those stated by Associate Justice Wolf." Chief Justice del Toro took no part, and Associate Justices Travieso and de Jesus dissented without opinion.

The phrase "for cause shown" is not defined in the statute, but I assume it relates to some cause affecting the ability or fitness of the officer to perform his duties. I take it that if appellant, under her official name as secretary of the court, maliciously and without probable cause, sent a telegram to the House of Representatives containing false and scandalous imputations against the Speaker, such an act would be legal cause for removal. But it cannot be, as the referee apparently thought, that the officer is subject to removal merely for sending the spirited telegram to the House of Representatives in answer to the Speaker's attack, regardless of the truth or falsity of the countercharges contained in the telegram. That would be making a novel and unwarranted enlargement of the "parliamentary immunity that protects every legislator". It may be that the charges against the Speaker were wholly false and malicious—this we cannot tell from the record before us—but appellant offered to prove these charges in concrete detail. The referee and the Governor denied her an opportunity to do so. The evidence she offered was relevant to the issues raised by the "special charge" and her answer thereto. Chief Justice del Toro in his opinion recognized that if the countercharges against the Speaker were proved to be true, "such a proof will have decisive importance to prove lack of just cause for removal based on the special charge."

The exclusion of this testimony pertinent to the special charge constitutes a fatal error in the proceedings, unless the Governor disregarded the special charge and based his removal solely on one or more of the so-called additional charges. Chief Justice del Toro assumed that this is what the Governor did, pointing to the recital in the order of removal above quoted. The Chief Justice considered that the findings of the referee on certain of the additional charges, though they established only trivial or technical delinquencies, would constitute legal cause for removal sufficient to sustain the Governor's order upon judicial review.

However, after reading the whole record, I do not see how anyone can escape the conclusion that the Governor never would have removed appellant from office upon the additional charges standing alone, and counsel for the Governor frankly admitted as much at the oral argument. Even if one or more of the additional charges afforded a technical basis for removal, it does not follow that the Governor would have removed appellant on such basis had he had before him all relevant evidence relating to the telegram incident, which after all was the foundation of the whole proceedings. It cannot be said that the error in excluding this evidence did not operate prejudicially to appellant.

Therefore, I think that the Governor's order of removal was invalid, that the judgment below should be reversed, and that the case should be remanded to the Supreme Court of Puerto Rico with directions to enter an appropriately worded judgment vacating and annulling the Governor's order.

Perhaps I should add a word about our jurisdiction, though the point was not earnestly pressed by the Governor in his brief or at the oral argument.

There may be a question whether appellant's affidavit of merit, filed with her petition for appeal, sufficiently discloses that the value in controversy exceeds $5,000, exclusive of interest and costs. But appellant also seeks to raise various federal questions, as to which no jurisdictional amount is requisite, 28 U.S.C.A. § 225.

Appellant makes the point that the court below would not have affirmed the judgment of Chief Justice del Toro by an equally divided vote but for an erroneous construction put by Mr. Justice Wolf upon

§ 49 of the Organic Act. But Mr. Justice Hutchinson, the other judge voting for affirmance, did not rest on this point, and in the peculiar situation presented it is difficult to say that the court below decided the case on a federal ground. See Adams v. Russell, 229 U.S. 353, 360, 361, 33 S.Ct. 846, 57 L.Ed. 1224. Further, the Governor at no time in the proceedings below claimed an absolute power of removal, and his counsel before us pressed no such contention. I find no precedent on the point, but I incline to the view that a federal question is presented when any judge whose vote is necessary to the rendition of the judgment appealed from puts his decision solely on a federal ground. Appellant moved for a rehearing in the court below on the ground, among others, of the error of law in Mr. Justice Wolf's opinion, and thus raised this federal question at the earliest possible point after the issue had come into the case. The Supreme Court denied the motion for rehearing.

Beyond this, appellant raised other federal questions which I have not set forth in this opinion. Upon examination, I do not believe they are well taken, but they are not so frivolous and unsubstantial as to be merely colorable pretexts for invoking our jurisdiction. We thereby acquired jurisdiction of the whole case and may proceed to decide the non-federal questions presented, even though the value in controversy may be less than $5,000. Municipality of Rio Piedras v. Serra, Garabis & Co., Inc., 1 Cir., 65 F.2d 691, 700–702.

I think, therefore, that Chief Justice del Toro, for the court below, properly allowed appellant's petition for appeal to this court.